UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) |
| v. | ) Case No. 18-mj-54 (RMM) )  |
| SHAILLY BARNES ET AL, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Defendants Shailly Barnes, Graylan S. Ellis Hagler, Jimmy Hawkins, William Lamar, Hershey A. Mallette, Rosalyn W. Pelles, Noam Sandweiss-Back, Robert T. Stephens, and Elizabeth Theoharis (collectively "Defendants") were arrested while praying on the Supreme Court plaza and charged with violating 40 U.S.C. § 6135 ("§ 6135" or "Section 6135"). *See* 40 U.S.C. § 6135 (2018). Section 6135 makes it unlawful "to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds ["the Assemblages Clause"], or to display in the Building and grounds a flag, banner or device designed or adapted to bring into public notice a party, organization, or movement ["the Display Clause"]." *Id*. Defendants Barnes, Hagler, Lamar, Mallette, Pelles, Sandweiss-Back, Stephens, and Theoharis have jointly moved to dismiss the Information as unconstitutional. *See* Defs.' Joint Mot. Dismiss ("Defs.' Mot."), ECF No. 108.[1] Defendant Hawkins has separately filed a Motion to Dismiss, in which he incorporates the arguments in Defendants' Joint Motion to Dismiss and raises a selective prosecution claim. *See generally* Mot. Dismiss for Selective Prosecution and Compel Disc.

---

[1] The Government filed a Motion in Opposition. *See generally* Gov't Mot. Opp.'n Defs.' Joint Mot. Dismiss ("Opp'n Mot."), ECF No. 121. Defendants filed a Reply Memorandum. *See generally* Reply Mem. Law Supp. Defs.' Joint Mot. Dismiss ("Defs.' Reply"), ECF No. 122.

1

("Hawkins Mot."), ECF No. 109.[2] Defendants collectively argue that the charges against them should be dismissed because: (1) § 6135 violates their First Amendment right to prayer and to all instances of prayer in the plaza; and (2) § 6135 is unconstitutionally overbroad and vague. Defs.' Mot. at 5. Mr. Hawkins also separately argues that he has been subjected to selective prosecution and asks that the Court dismiss the charges against him on that basis or, alternatively, authorize discovery regarding selective prosecution. Hawkins Mot. The Court DENIES the joint motion to dismiss and Mr. Hawkins' separate motion for the reasons set forth below.[3]

## BACKGROUND[4]

On June 11, 2018, Defendants allegedly were among a group of demonstrators marching on First Street, N.E., near the United States Supreme Court. *See* Opp'n Mot. at 1. Defendants identify as religious individuals and leaders associated with The Poor People's Campaign: A National Call for Moral Revival.[5] Defs.' Mot. at 1–2. During the march, Defendants wore matching clothing connecting them to the Poor People's Campaign. Opp'n Mot. at 1.

After First Street, N.E., was reopened for vehicle use at the conclusion of the march, approximately 100 to 150 demonstrators remained on the sidewalk in front of the Supreme Court

---

[2] The Government filed a Motion in Opposition. *See generally* Gov't Mot. Opp.'n Defs.' Mot. Dismiss ("Hawkins Opp'n"), ECF No. 121.
[3] The Court announced its intention to deny both motions at a September 27, 2019 hearing. This Memorandum Opinion and Order formally resolves the pending motions and provides the rationale underlying that ruling.
[4] Due to the pre-trial posture of this case, the facts have not yet been established. The background section of this opinion will rely upon the facts alleged in the Information and the parties' briefs.
[5] The Poor People's Campaign is a bipartisan group "rooted in a moral analysis based on our deepest religious and constitutional values . . . ." *Fundamental Principles*, Poor People's Campaign, https://www.poorpeoplescampaign.org/fundamental-principles/ (last visited June 7, 2019).

building. *Id.* at 2. The United States Supreme Court Police Department ("USSCPD") surveyed the crowd and observed the nine Defendants depart from the larger group, walk onto the lower steps of the Supreme Court plaza, and gather in a circle near the base of the stairs of the Supreme Court building. *Id.* No arguments had been scheduled before the Court on that date. Defs.' Mot. at 2. Members of the public were on the plaza, and individuals with recording devices surrounded Defendants. *Id.; see also* Defs.' Mot. Ex. 3, Governmental Camera 101. Defendants prayed together on the Supreme Court plaza. Defs.' Mot. at 1–2. Defendants describe their prayer as "address[ing] voter suppression, economic inequality, and persistent poverty in the United States." *Id.* at 2. While Defendants were gathered at the base, one defendant, Elizabeth Theoharis, gave a speech through a microphone connected to a megaphone. Opp'n Mot. at 2. She passed the microphone to others gathered around her. *Id.*

USSCPD blocked entry to the Court's main door to prevent Defendants from progressing into the building. *Id.* While Defendants prayed in the plaza, USSCPD Chief Jeff Smith issued three warnings to Defendants within a ten-minute timespan. *Id.* With each warning, Chief Smith notified Defendants that if they did not leave the premises, USSCPD would arrest them. *Id.* After Defendants ignored the warnings, USSCPD began arresting the Defendants. *Id.* These arrests drew applause from onlooking demonstrators from the sidewalk. *Id.* The Defendants were arrested and charged with violating 40 U.S.C. § 6135. *Id.* at 3.

In an Information filed June 12, 2018, the United States charged Defendants with violating 40 U.S.C. § 6135. *See* Information at 2, ECF No. 1. Defendants face a maximum fine of up to $5,000 and a maximum sentence of up to sixty days in jail. *See* 18 U.S.C. § 3571(b)(6) (2018); 40 U.S.C. § 6137(a) (2018). Defendants have been on pretrial release since their initial appearance before this Court on June 12, 2018.

# DISCUSSION

## I. DEFENDANTS' JOINT CONSTITUTIONAL CHALLENGE

Defendants contend that the Information should be dismissed because § 6135 violates the First Amendment as applied to Defendants' alleged conduct on June 11, 2018 and to all instances of prayer on the Supreme Court plaza. Defs.' Mot. at 5; Hawkins Mot. at 1. The statute provides that, "[i]t is unlawful to parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement." 40 U.S.C. § 6135 (2018). In *Hodge v. Talkin,* the D.C. Circuit found § 6135 constitutional as applied to the *Hodge* plaintiff's desire to picket, leaflet, and make a speech in the Supreme Court plaza. *Hodge v. Talkin,* 799 F.3d 1145, 1150 (D.C. Cir. 2015). Defendants contend that their prayer is an expressive activity that was not addressed in *Hodge*, and that precluding them from praying on the Supreme Court plaza would violate the First Amendment. *See* Defs.' Mot. at 5. Defendants also assert that § 6135 is overbroad and unconstitutionally vague. *See id.* at 6. The United States counters that § 6135 is a reasonable restriction on speech that is neither overbroad nor void for vagueness. *See* Opp'n Mot. at 6-9. The Court concludes that § 6135 may be constitutionally applied to Defendants' alleged conduct at the Supreme Court on June 11, 2018, and therefore rejects Defendants' First Amendment challenge to the Information.

### A. Section 6135 Does Not Violate the First Amendment as Applied to Defendants or Other Individuals Who Wish to Pray on the Supreme Court Plaza

#### 1. Legal Standard Governing First Amendment Claims

The First Amendment protects the right to free speech and expression, but does not give individuals an unfettered right to engage in expressive activity "wherever (and whenever) [they]

would like." *Hodge*, 799 F.3d at 1157. The government may restrict speech on government property, and the scrutiny to which those restrictions will be subjected turns on the nature of the forum where the speech takes place. *See Minnesota Voters Alliance v. Manksy*, 138 S. Ct. 1876, 1885 (2018). Restrictions on speech in public forums are scrutinized more closely than restrictions on speech in nonpublic forums. *See id*. In public forums, "the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Id.* In nonpublic forums, the government may prohibit speech "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.*; *see also Hodge*, 799 F.3d at 1150. Thus, to determine whether a restriction on speech violates the First Amendment, courts "proceed in three steps: first, determining whether the First Amendment protects the speech at issue, then identifying the nature of the forum, and finally assessing whether the [government's] justifications for restricting …speech 'satisfy the requisite standard.'" *Mahoney v. Doe,* 642 F.3d 1112, 1116 (D.C. Cir. 2011) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 797 (1985)).

  **2.**   *Hodge v. Talkin*

The Court's analysis of Defendants' First Amendment claims must begin with the D.C. Circuit's holding in *Hodge v. Talkin*, given the overlap between the issues addressed in *Hodge* and the arguments Defendants raise here. In *Hodge*, a student who had previously been arrested for violating § 6135 sought to return to the Court to picket, distribute leaflets, and make political speeches on the Supreme Court plaza. 799 F.3d at 1154. Mr. Hodge argued that § 6135 violated his First Amendment rights to expression and was unconstitutionally overbroad and vague. *See id*. When reviewing Mr. Hodge's challenge to the statute's restriction of his First Amendment

rights, the Court declined to classify Mr. Hodge's constitutional claims as a purely facial or as applied challenge, and instead "examine[d] the validity of the statute's application to . . . [the Supreme Court] plaza—looking beyond the plaintiff's particular conduct when assessing the statute's fit." *Id.* at 1156-57.

*Hodge* upheld the constitutionality of § 6135, rejecting Mr. Hodge's assertion that the statute was "unconstitutional in all its applications in the Supreme Court plaza." *Hodge,* 799 F.3d at 1157. First, the D.C. Circuit determined that the Supreme Court plaza is a nonpublic forum, after reviewing its structural design, its public accessibility, and the importance of maintaining "the Court's central purpose, the administration of justice to all who seek it." *Id.* at 1158–62. As such, the First Amendment allows the government to implement "reasonable restrictions on speech [at the plaza] as long as it refrains from suppressing particular viewpoints." *Id*. at 1150. Applying that test, the D.C. Circuit determined that § 6135 reasonably relates to the government's interests in "preserving decorum in the area of a courthouse and in assuring the appearance (and actuality) of a judiciary uninfluenced by public opinion and pressure." *Id.* It further held that § 6135 is neither overbroad nor vague, in part because the statute applies only to expressive conduct intended to attract attention. *See id.* at 1168.

### 3. Section 6135 Does Not Unreasonably Restrict Defendants' First Amendment Expression

Given that Defendants' prayer is clearly a form of expression protected by the First Amendment, and that *Hodge* establishes that the Supreme Court plaza is a nonpublic forum, the Court's analysis of this constitutional challenge turns on a single issue: whether § 6135 is an unreasonable regulation of Defendants' protected speech. The government may permissibly restrict any speech in nonpublic forums provided that the restriction is reasonable and not an effort to suppress the speaker's speech due to disagreement with the speaker's view. *See Hodge,*

6

799 F.3d at 1158 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 679 (1992)). The reasonableness test evaluates whether the restrictions on speech "are reasonable in light of the government's interest in preserving the property for its intended purposes." *Id.* at 1162 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46 (1983)). The restrictions need not be narrowly tailored to further the government's asserted interest, and consequently "need not be the most reasonable or the only reasonable limitation" that would effectuate that interest. *Id.* at 1165 (citing *Cornelius v. NAACP Legal Def. and Educ. Fund.*, 473 U.S. 788, 808 (1985)).

Here, the identified government interests are the same as those at issue in *Hodge*: i.e. "interests in maintaining order and decorum at the Supreme Court and in avoiding the impression that popular opinion and public pressure affect the Court's deliberations." *Hodge*, 799 F.3d at 1165. The public prayer with which Defendants have been charged was a demonstration designed to bring attention to political, social, and religious issues. *See* Defs.' Mot. at 6. At least one Defendant allegedly spoke using a megaphone, and Defendants allegedly passed around a microphone, made speeches, and were observed by a crowd that gathered near the plaza. *See* Opp'n Mot. at 2. Thus, although Defendants contend that they did not leaflet or carry large signs, their charged conduct is a demonstration that would (and did) draw attention. Restricting such displays "promotes a setting of decorum and order at the Supreme Court," as the D.C. Circuit recognized in *Hodge*. *Hodge*, 799 F.3d at 1165. Further, prohibiting demonstrations that draw attention to social, political, or religious issues reasonably advances the government's interest in protecting the integrity of the judicial process against the appearance that the Supreme Court's decision-making process can be influenced by public or political pressure. *See id.* at 1166.

7

Defendants contend that their prayer demonstration was similar to activities that have been allowed to occur on the plaza, and thus cannot plausibly have threatened the decorum, order, or integrity of the Supreme Court. *See* Defs.' Mot. at 8-9. Even assuming that Defendants have accurately identified similarities between their alleged conduct and other events on the plaza, that proves only that Defendants' alleged conduct implicates the concerns underlying § 6135 to a lesser degree than other types of demonstrations. That does not render § 6135 unconstitutional, however, because "the validity of a regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interest in an individual case." *Hodge*, 799 F.3d at 1167 (citing *Ward v. Rock Against Racism,* 491 U.S. 781, 801 (1989)). Indeed, Congress "may reach beyond what is strictly necessary to vindicate [the cited government] interests," where, as here, it regulates speech in a nonpublic forum. *Id*. at 1165.

Defendants also suggest that their expressive activity should be afforded special protection because it involves prayer. *See* Defs.' Mot. at 5, 8-9. However, the degree of scrutiny applied to restraints on speech turns on the nature of the forum where the speech occurs, not the form of or motivation underlying the expression. *See generally Henderson v. Kennedy*, 253 F.3d 12, 19 (D.C. Cir. 2001) (declining to apply heightened scrutiny to a claim that implicated both the Free Exercise clause and the Free Speech clause of the First Amendment). If § 6135 expressly singled out prayer as a prohibited form of expression but allowed purely secular speeches or similar expressive activities, it arguably might be an improper content—or viewpoint—based restraint or implicate the Free Exercise clause. However, § 6135 is content-neutral and only prohibits prayer to the extent that some forms of prayer fall within the scope of the assemblies, processions, and similar expressive activity that § 6135 reaches. In sum, there is

a sufficient connection between the two government goals at issue and § 6135's prohibition of demonstrations (including prayer demonstrations) to satisfy First Amendment scrutiny.

Defendants' characterization of § 6135 as a viewpoint based restriction of prayer is misplaced. *See* Defs.' Reply at 2. On its face, the statute does not distinguish between the content of or viewpoint reflected in the prohibited demonstration or other expressive activity. *See Hodge*, 799 F.3d at 1170 (describing the statute as "viewpoint-neutral"). The fact that law enforcement applies a viewpoint-neutral law to conduct designed to convey specific messages regarding poverty, social justice, and political issues does not transform that law into a restriction of a specific viewpoint for purposes of First Amendment analysis. Defendants' assertion that other individuals have prayed, given speeches, or demonstrated on the plaza, even if true, does not support an inference that applying § 6135 to Defendants targets them for their viewpoint. Such an argument is better suited to a selective enforcement claim, which the Court will review *infra*.[6]

### 4. Section 6135 is Not Overly Broad

Defendants also assert that § 6135 is overbroad, contending that it "'fails to draw reasonably clear lines' between the kinds of conduct that are 'criminal and those that are not.'" Defs.' Mot. at 8 (quoting *Smith v. Goguen,* 415 U.S. 566, 574 (1974)). As was true in *Hodge*, Defendants' overbreadth arguments are not meaningfully distinguishable from their challenge to the reasonableness of § 6135. To the extent that Defendants contend that the statute is overbroad because it chills speech similar to their prayer demonstration, the overbreadth analysis merges

---

[6] In *Hodge*, the plaintiff relied on prior demonstrations or speeches to support an argument that the Supreme Court plaza was a public forum. However, the D.C. Circuit rejected that assertion. *See Hodge*, 799 F.3d at 1161–62 (concluding that exceptions to the enforcement of the statute did not make the Supreme Court plaza a public forum). Defendants do not directly raise that argument here, and *Hodge* would foreclose that argument if they had done so.

9

with the assessment of the reasonableness of the restraint on speech. *See Hodge*, 799 F.3d at 1171 (concluding that overbreadth challenge was "analytically identical" to plaintiff's challenge to the reasonableness of the restriction on his speech and declining to separately evaluate the issue). To the extent that Defendants contend that the statute is overbroad because it cannot be applied to anyone who prays in the plaza, that argument also duplicates their challenge to the reasonableness of the restraint on speech and requires no further analysis. *See id.* (concluding that Hodge's assertion "that § 6135 cannot be applied to anyone, including himself, in the Supreme Court plaza because it curtails too much speech" appears to raise an overbreadth claim but overlaps with the evaluation of the reasonableness of the restriction on speech). As explained above, § 6135's prohibitions reasonably further the asserted government interests, and it is constitutionally permissible for the statute to prohibit more conduct than is strictly necessary to further those interests.

### B. Section 6135 Is Not Void for Vagueness

#### 1. Legal Standard Governing Claims that a Statute is Unconstitutionally Vague

Defendants also contend that § 6135 is unconstitutionally vague. Vague criminal laws implicate the Fifth Amendment because "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Hodge*, 799 F.3d at 1172 (citing *United States v. Williams,* 553 U.S. 285, 304 (2008)). Accordingly, the void-for-vagueness doctrine focuses on whether a statute that criminalizes certain conduct gives "actual notice to citizens" and is written with sufficient clarity to avoid "arbitrary enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Defendants argue that § 6135 "'fails to draw reasonably clear lines' between the kinds of conduct that are

'criminal and those that are not,'" thereby creating a risk that law enforcement will arbitrarily and selectively enforce the statute. Defs.' Mot. at 8 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)); *see also* Defs.' Reply at 4–5.

### 2. Section 6135 Provides Sufficient Notice of Its Parameters and Establishes Guidelines for Its Enforcement.

To the extent that Defendants' vagueness arguments challenge the notice provided by § 6135, *Hodge* forecloses the argument. The D.C. Circuit rejected the premise that § 6135's Assemblage Clause is so vague that it "pertains to *any* circumstance in which multiple persons stand or participate in some sort of procession on the plaza, regardless of whether they are engaged in expressive activity." *Hodge*, 799 F.3d at 1172 (emphasis in original). Instead, the clause reaches only "joint conduct that is expressive in nature and aimed to draw attention." *Id.* at 1168. Thus, there is no basis for confusion about whether an individual standing alone who briefly bows her head in silent prayer would run the risk of prosecution. Similarly, the Display Clause "plainly involves expressive conduct" and focuses "on conduct meant to attract attention." *Id.* That portion of the statute is not intended to criminalize behavior such as "a single person's mere wearing of a t-shirt containing words or symbols on the plaza—if there are no attendant circumstances indicating her intention to draw onlookers." *Id.* at 1169. Both statutory clauses target behavior that would cause onlookers to stop and take notice of the individuals and their cause. *Id.* Therefore, a citizen who wishes to pray or otherwise express herself on the Supreme Court plaza can reasonably ascertain whether the law prohibits that prayer or expression.

Defendants' principal vagueness argument invokes the arbitrary enforcement prong of the void-for-vagueness test. Defendants contend that § 6135 is so imprecise that it authorizes or encourages law enforcement to discriminatorily choose which forms of prayer to prosecute. *See*

11

Defs.' Reply at 4–5. To evaluate such a claim, courts ask whether the challenged statute "establish[es] minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358.

Section 6135 is not a "standardless" law. *Hodge*, 799 F.3d at 1172 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). It only prohibits prayer to the extent that a group engages in a form of prayer that is an assembly, *i.e.* that tends to draw attention. *See generally Hodge*, 799 F.3d at 1168 (defining the scope of § 6135). Thus, law enforcement may look to "attendant circumstances indicating [one's] intention to draw onlookers" to determine whether a group prayer or other expressive activity violates the law. *Id.* at 1169. Although that standard may require officers to exercise judgment to determine whether a group prayer has crossed the line between permitted and prohibited conduct, "[t]he vagueness doctrine does not require 'perfect clarity and precise guidance.'" *Metropolitan Washington Chapter v. District of Columbia*, 57 F. Supp. 3d 1, 31 (D.D.C. 2014); *see also Williams*, 553 U.S. at 304 (citing *Ward*, 491 U.S. at 794) (noting that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.").

The government's proffer regarding Defendants' alleged conduct illustrates the parameters that govern prosecutions under § 6135. Defendants are not accused of simply gathering to pray on the steps of the Supreme Court plaza. Instead, Defendants admit for purposes of their motion to dismiss that their prayer was a demonstration intended to bring attention to themselves and to their cause. *See* Defs.' Mot. at 6. After participating in a larger demonstration on the streets, Defendants allegedly broke away from the sidewalk, dressed in matching t-shirts with the aim of bringing awareness to their cause. *See* Opp'n Mot. at 1–2. Defendants allegedly carried a megaphone with a microphone attached, and at least one member of the group gave a speech into the megaphone to a crowd of onlookers with cameras. *Id.* at 2.

Defendants characterize their behavior as "bringing attention to voter suppression, systemic inequality, and poverty in the United States." Defs.' Mot at 6.

Defendants' assertion that other demonstrations and prayers have occurred at the Supreme Court does not prove that the statute is so vague as to invite arbitrary enforcement. Defendants analogize their behavior on the plaza with the annual Religious Freedom Coalition's National Day of Prayer, a day when individuals gather to pray on the Supreme Court plaza. *See* Defs.' Reply at 8. The author of a May 2012 report from the Religious Freedom Coalition states that a prayer group could permissibly convene on the steps of the Supreme Court plaza "as long *as the group did not constitute a 'demonstration'*" and appears to characterize "the line between" prayer and a demonstration as "very ill defined." Defs.' Mot., Ex. 10, Nat'l Day of Prayer Special Rep., ECF No. 108-10 (emphasis added). Defendants also reference protests surrounding Justice Kavanaugh's confirmation hearings and a handful of other alleged demonstrations at the Supreme Court. However, there is no basis to infer that the government's alleged failure to arrest or prosecute people who participated in prior National Days of Prayer results from any lack of definable statutory standards in the statute. A group prayer on the National Day of Prayer that is designed to draw onlookers would appear to cross the line between lawful and unlawful activity under § 6135 as interpreted by the D.C. Circuit in *Hodge*. Similarly, a group of individuals protesting Justice Kavanaugh's confirmation hypothetically could violate § 6135 by giving loud speeches or holding large signs. If there is evidence that law enforcement has repeatedly disregarded § 6135's restrictions and allowed demonstrations on the National Day of Prayer and other occasions, that may support a selective enforcement claim but does not, standing alone, demonstrate that the statute is void for vagueness. Put differently, the

fact that law enforcement may periodically fail to follow the standards codified in a criminal statute does not prove that the statute lacks any such standards.

## II. MR. HAWKINS'S SELECTIVE PROSECUTION CLAIMS

Mr. Hawkins seeks to dismiss the charges he faces on the ground that he is being selectively prosecuted. *See* Hawkins Mot. at 2–4. In the alternative, if the Court does not dismiss the charges against Mr. Hawkins, he seeks discovery on the issue of selective prosecution. *See id.* at 4. The United States contends that Mr. Hawkins has neither made a prima facie showing of selective prosecution nor presented evidence sufficient to entitle him to discovery regarding selective prosecution. *See generally* Hawkins Opp'n. Because Mr. Hawkins fails to provide any evidence to support either dismissal or discovery, the Court denies his motion.

### A. Legal Standard Governing Selective Prosecution Claims

Prosecutorial decisions enjoy a "presumption of regularity" and "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Nevertheless, prosecutorial discretion is "subject to constitutional constraints." *Armstrong*, 517 U.S. at 464 (quotation marks omitted) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). "The Equal Protection Clause prohibits selective enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Batchelder*, 442 U.S. at 125 n.9 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

To establish selective prosecution, Mr. Hawkins "must show both (1) that he was singled out for prosecution from others similarly situated and (2) that his prosecution was motivated by a

discriminatory purpose." *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009); *accord United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982); *see also Armstrong*, 517 U.S. at 465 ("The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985))). As this inquiry asks the court to "invade a special province of the Executive—its prosecutorial discretion . . . the standard for proving [this claim] is particularly demanding." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999); *accord Armstrong*, 517 U.S. at 463. "[I]n order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Armstrong*, 517 U.S. at 465 (quotation marks omitted) (quoting *Chemical Found.*, 272 U.S. at 14–15). Thus "[t]o warrant dismissal, a defendant must present 'clear evidence' that the decision to prosecute [him] had a discriminatory effect and was motivated by a discriminatory purpose." *United States v. Palfrey*, 499 F. Supp. 2d 34, 39 (D.D.C. 2007) (quoting *Armstrong*, 517 U.S. at 464).

A defendant may obtain discovery in support of a selective prosecution claim by showing "some evidence tending to show the existence of the essential elements" of the claim. *Armstrong*, 517 U.S. at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)) (internal quotation marks omitted); *see also Attorney Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (noting that defendant "must offer at least a colorable claim both that the prosecution was improperly motivated and that it was selective in the first place."); *Khanu*, 664 F. Supp. 2d at 31. This "colorable showing must be made with respect to both prongs of the test." *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 16 (D.D.C. 1997) (citing *Irish People, Inc.*, 684 F.2d at 932).

15

### B. Mr. Hawkins Has Not Made a Prima Facie Showing That He Was Selectively Prosecuted

Mr. Hawkins argues that a "multitude of similarly situated persons have engaged in the same type of activity" and were not prosecuted under § 6135, specifically drawing comparisons to demonstrators who protested Justice Kavanaugh's nomination while holding signs on the plaza and even banging on the doors of the Supreme Court building. *See* Hawkins Mot. at 3. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *Khanu*, 664 F. Supp. 2d at 32 (internal quotation marks omitted) (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)); *see also United States v. Blackley*, 986 F. Supp. 616, 619 (D.D.C. 1997) (describing similarly situated individuals as those with "some degree of commonality of conduct among the indictable group"). "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997) (internal quotation marks omitted) (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)), *cited in Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000).[7]

Mr. Hawkins asserts that there are no legitimate prosecutorial reasons that can explain why he was treated differently than unidentified Justice Kavanaugh demonstrators, who despite

---

[7] Prosecutorial factors may include "the strength of the evidence against a particular defendant, the defendant's role in the crime, whether the defendant is being prosecuted by state authorities, the defendant's candor and willingness to plead guilty, the amount of resources required to convict a defendant, the extent of prosecutorial resources, the potential impact of a prosecution on related investigations and prosecutions, and prosecutorial priorities for addressing specific types of illegal conduct." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

being "louder" and "more disruptive" than him allegedly were not arrested or prosecuted in federal court under § 6135. *See* Hawkins Mot. at 3. Mr. Hawkins then posits that because there is no legitimate rationale to explain the disparate treatment, the only explanation is that the content of his speech, an impermissible ground, motivated the decision to prosecute him. *See id.* Mr. Hawkins states that as a result of the disparate treatment, he faces pretrial supervision, possible fines, and possible incarceration, whereas other similarly situated persons do not. *See id.*

Mr. Hawkins bears the burden of proving a discriminatory effect and "must show that similarly situated individuals" were not prosecuted in federal court. *Armstrong*, 517 U.S. at 465. In *Armstrong*, the Supreme Court rejected the view that a defendant could "establish a colorable basis for discriminatory effect without evidence that the Government has failed to prosecute others who are similarly situated to the defendant." *Id.* at 469. Mr. Hawkins has failed to provide any such evidence that the Justice Kavanaugh protesters were (1) similarly situated or (2) not arrested or prosecuted in federal court under § 6135; instead, he offers only his conclusory and unsupported assertion that unidentified protesters were not arrested or prosecuted in federal court. The government refutes Mr. Hawkins' claims, responding that similarly situated persons, including Justice Kavanaugh protesters, have been prosecuted in federal court. *See* Hawkins Opp'n at 4. As such, Mr. Hawkins fails to establish the first prong of a selective prosecution claim.

To prove that the government acted with a discriminatory purpose, Mr. Hawkins must show "that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *Mangieri*, 694 F.2d at 1273 (citations omitted). Specifically, a defendant

17

"must prove that the decisionmakers in [his] case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). As "direct evidence of discrimination is rarely available, a defendant may use statistical disparities and other indirect evidence to show bias or discriminatory motive." *Khanu*, 664 F. Supp. 2d at 33 (citing *Branch*, 970 F. Supp. at 17). Such statistical proof "must present a 'stark' pattern to be accepted as the sole proof of discriminatory intent under the Constitution." *Id.* (quoting *McCleskey*, 481 U.S. at 293).

Here, Mr. Hawkins ascribes discriminatory intent to the government based solely on the notion that individuals who protested Justice Kavanaugh's confirmation were not prosecuted, whereas he was; he assumes that this disparate treatment must have been based on the content of his speech. *See* Hawkins Mot. at 3. This jump misses the mark. Mr. Hawkins fails to provide any evidence, beyond his own speculation, that he was prosecuted because of his speech. Therefore, Mr. Hawkins fails to establish the second prong of a selective prosecution claim.

### C. Mr. Hawkins Is Not Entitled to Discovery Regarding Selective Prosecution

As an alternative, Mr. Hawkins requests that the Court order the government to provide discovery including: (1) a list of all cases involving potential violations of § 6135 at the Supreme Court and whether those cases were prosecuted in federal court or elsewhere; (2) the subject matter of the speech of the persons involved in those cases; (3) a list of law enforcement agencies involved in those cases; and (4) the criteria for deciding whether and where to prosecute those defendants. Hawkins Mot. at 4. To obtain discovery, a defendant "must provide something

more than mere speculation or personal conclusions based on anecdotal evidence." *United States v. Hsia*, 24 F. Supp. 2d 33, 49 (D.D.C. 1998) (internal quotation marks omitted) (citing *Armstrong*, 517 U.S. at 470), *rev'd in part, appeal dismissed in part on other grounds*, 176 F.3d 517 (D.C. Cir. 1999); *see also Armstrong*, 517 U.S. at 470 (requiring something more than "personal conclusions based on anecdotal evidence" to merit discovery on the basis of "some evidence"). The Court can neither dismiss a case nor order discovery for selective prosecution based solely on unfounded speculation that Mr. Hawkins will later procure evidence of a discriminatory effect. *See Armstrong*, 517 U.S. at 470 (noting that "the required threshold—a credible showing of different treatment of similarly situated persons—adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution"); *cf. United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (noting how the "trial court permitted discovery" on a selective prosecution claim, "after the defendant introduced evidence suggesting a link" between government foreign policy and individuals exercising certain religious beliefs).

In sum, Mr. Hawkins has failed to provide sufficient evidence to present a colorable claim of selective prosecution and is not entitled to discovery. *See Blackley*, 986 F. Supp. at 620 ("Because defendant has not alleged a sufficient or colorable *prima facie* claim of selective prosecution, he is not entitled an evidentiary hearing or discovery"). Therefore, he also has not met the higher clear evidence standard that would merit dismissing a case for selective prosecution. *See Armstrong*, 517 U.S. at 465.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss [ECF No. 108] is **DENIED**. Is further **ORDERED** that Mr. Hawkins' Motion to Dismiss [ECF No. 109] is also **DENIED.**

Dated: October 24, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE