**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-mj-054-RMM** |
| | ) | |
| **BARNES, ET AL.** | ) | |

**<u>APPEAL FROM THE UNITED STATES DISTRICT COURT</u>**
**<u>FOR THE DISTRICT OF COLUMBIA MAGISTRATE DECISION</u>**
**<u>DENYING DEFENDANT'S JOINT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

I.     JURISDICTIONAL STATEMENT ..................................................................................1

II.    STATEMENT OF THE ISSUE.......................................................................................1

III.   STATEMENT OF FACTS/PRIOR PROCEEDINGS.......................................................1

IV.   SUMMARY OF ARGUMENT ......................................................................................3

V.    STANDARD OF REVIEW ...........................................................................................4

VI.   ARGUMENT ...............................................................................................................5

      A.    THE GROUNDS OF THE SUPREME COURT ARE A PUBLIC FORUM, THE RESTRICTION UNDER SECTION 6135 VIOLATE THE FIRST AMENDMENT................................................................................................5

            1.    Restriction of Protected Expression on a Public Forum Must be Narrowly Tailored and Viewpoint Neutral ..................................................................5

            2.    Notwithstanding this Court's Decision in *Hodge*, the Grounds of the Supreme Court are a Public Forum............................................................7

            3.    Section 6135 Is Neither Narrowly Tailored to Serve a Significant Governmental Interest nor Viewpoint Neutral ...........................................9

      B.    EVEN IF THIS COURT DISAGREES THAT THE GROUNDS OF THE SUPREME COURT ARE A PUBLIC FORUM, THE RESTRICTIONS UNDER SECTION 6135 ARE NOT REASONABLE AND VIOLATE THE FIRST AMENDMENT................................................................................................14

            1.    The Government May Only Restrict Protected Expression in a Non-Public Forum if the Restriction is Reasonable ..........................................14

            2.    Section 6135 Unreasonably Restricts Constitutionally Protected Expression and Thus Violates the First Amendment..................................15

VII.  CONCLUSION...........................................................................................................17

# CASES

*Berner v. Delahanty,*
 129 F.3d 20 (1st Cir. 1997) ........................................................................ 8

*Bloch v. District of Columbia,*
 863 A.2d 845 (D.C. 2004) ..................................................................... 6, 13

*Bonowitz v. U.S.,*
 741 A.2d 18 (1999) ...................................................................................... 7

*Bridges v. State of Cal.,*
 314 U.S. 252 (1941) .................................................................................. 17

*Buckley v. Illinois Judicial Inquiry Bd.,*
 997 F.2d 224 (7th Cir. 1993) ..................................................................... 16

*Cohen v. California,*
 403 U.S. 15 (1971) ...................................................................................... 8

*Grayned v. City of Rockford,*
 408 U.S. 104 (1972) ................................................................................ 5, 6

*Grider v. Abramson,*
 994 F. Supp. 840 (W.D. Ky. 1998), *aff'd*, 180 F.3d 739 (6th Cir. 1999) ................. 7

*Hodge v. Talkin,*
 799 F.3d 1145 (D.C. Cir. 2015) ........................................................... passim

*Houston v. Hill,*
 482 U.S. 451 (1987) .................................................................................. 12

*Huminski v. Corsones,*
 396 F.3d 53 (2d Cir. 2005) .......................................................................... 8

*Initiative & Referendum Inst. v. U.S. Postal Serv.,*
 417 F.3d 1299 (D.C. Cir. 2005) .................................................................... 6

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,*
 505 U.S. 672 (1992) .................................................................................. 14

*Jeannette Rankin Brigade v. Chief of Capitol Police,*
 342 F. Supp. 575 (D.D.C. 1972), *aff'd mem*, 409 U.S. 972 (1972) ................... 7, 8

*Landmark Communications, Inc. v. Virginia,*
 435 U.S. 829 (1978) .................................................................................. 16

*McIntyre v. Ohio Elections Comm'n,*
 514 U.S. 334 (1995) .................................................................................. 10

*Minnesota Voters Alliance v. Mansky,*
 138 S. Ct. 1876 (2018) .......................................................................... 6, 13

*Pearson v. United States,*
 581 A.2d 347 (D.C. 1990) ..................................................................... 7, 14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
 460 U.S. 37 (1983) ...................................................................................... 5

*Pleasant Grove City, Utah v. Summum,*
   555 U.S. 460 (1983) ............................................................................................. 6

*Police Dep't of Chicago v. Mosley,*
   408 U.S. 92 (1972) ........................................................................................... 12

*Republican Party of Minnesota v. White,*
   536 U.S. 765 (2002) ......................................................................................... 15

*U.S. v. Marcavage,*
   609 F.3d 264 (3d Cir. 2010) ............................................................................ 11

*U.S. v. Wall,*
   521 A.2d 1140 (D.C. 1987) .............................................................................. 14

*United States v. Choi,*
   818 F. Supp. 2d 79 (D.D.C. 2011) ..................................................................... 4

*United States v. Grace,*
   461 U.S. 171 (1983) ................................................................................. passim

*United States v. Reese,*
   92 U.S. (2 Otto) 214 (1875) ............................................................................. 12

*United States v. Wheeler,*
   746 F. Supp. 2d 159 (D.D.C. 2010) ............................................................... 4, 5

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ........................................................................................... 6

*Warren v. Fairfax County,*
   196 F.3d 186 (4th Cir. 1999) ............................................................................. 6

## STATUTORY AUTHORITIES

18 U.S.C. § 3571(b)(6) ........................................................................................... 2

28 U.S.C. § 1331, ................................................................................................... 1

40 U.S.C. § 6135, ......................................................................................... passim

40 U.S.C. § 6135 ............................................................................................... 2, 3

40 U.S.C. §6135 ...................................................................................................... 2

40 U.S.C. § 6137(a) ................................................................................................ 2

## I.     JURISDICTIONAL STATEMENT

The United States District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and is authorized to review the Magistrate's judgment by LCrR 58(e) and Fed. R. Crim. P. 58(g)(2)(B).

## II.     STATEMENT OF THE ISSUE

Whether 40 U.S.C. § 6135, which makes it unlawful to "parade, stand, or move in processions or assemblages in the Supreme Court Building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party, organization, or movement," violates the First Amendment as applied to criminalizing Defendants' expressive conduct on the Supreme Court Plaza.

## III.     STATEMENT OF FACTS/PRIOR PROCEEDINGS

Defendants, Shailly Barnes, Rosalyn Woodward Pelles, and Reverend Elizabeth Theoharis (collectively, Defendants), persons of faith who advocate for social justice, were arrested on June 11, 2018, while holding hands and praying on the Plaza of the Supreme Court ("Plaza"). ECF No. 164 at 1. Defendants are members of the Poor People's Campaign, a, non-violent, non-partisan organization whose mission is to continue the economic justice advocacy that was central to Reverend Martin Luther King, Jr. *Id.* at n. 5. On this day, Defendants bowed their heads and prayed to address voter suppression, economic inequality, and persistent poverty in the United States.

Defendants were positioned on the Plaza in a manner so as not to obstruct the entryway to the Supreme Court or otherwise impede the flow of movement on the Plaza. *See* Ex. A. They were gathered standing in a circle. *See id.*, Ex. B. Other members of the public continued to mill about the Plaza. *See* Ex. A. There is no record of a noise complaint associated with the prayer.

1

On June 11, 2018, there were no arguments scheduled before the Supreme Court. See October 2017 Supreme Court calendar, Supreme Court of the United States, available at https://www.supremecourt.gov/oral_arguments/2017TermCourtCalendar.pdf.

The Capitol Police issued three warnings to disperse. When Defendants did not comply, they were arrested, *see* Ex. C and subsequently charged with violating 40 U.S.C. § 6135, ECF No. 1, which makes it unlawful to "parade, stand, or move in processions or assemblages in the Supreme Court building or grounds, or to display in the Building and grounds a flag, banner, or device designed or adapted to bring into public notice a party organization, or movement." 40 U.S.C. § 6135. As a result of being charged with violating 40 U.S.C. § 6135, Defendants faced a $5,000 maximum fine and up to 60 days in jail. *See* 18 U.S.C. § 3571(b)(6) ("[A]n individual who has been found guilty of an offense may be fined…for a Class B or C misdemeanor that does not result in death, not more than $5,000); 40 U.S.C. § 6137(a) ("An individual who violates this subchapter, or a regulation prescribed under section 6102 of this title, shall be fine under title 18, imprisoned not more than 60 days, or both.")[1]

On February 14, 2019, Defendants filed a motion to dismiss the charges against them. ECF No. 108. On October 24, 2019, the District Court for the District of Columbia, Magistrate Judge Robin M. Meriweather denied the motion. ECF No. 164. Judge Meriweather held that: (i) 40 U.S.C. §6135 did not unreasonably restrict Defendants' First Amendment Rights; (ii) 40 U.S.C. § 6135 was not overly broad; and (iii) 40 U.S.C. § 6135 is not void for vagueness. On October 28, 2019, the scheduled trial was converted into a plea hearing, and the Defendants entered guilty pleas to the Information and were each sentenced to time served, a $100 fine, and

---

[1] *See also Defs.' Mot. for Jury Trial* (Aug. 10, 2018), ECF No. 61 (describing why the 40 U.S.C. § 6135 criminal penalties coupled with the core First Amendment issues raised by this case entitle defendants to a jury trial).

a $10 special assessment. October 28, 2019 Minute Entry for Plea Hearing, App. at 27; and October 28, 2019 Minute Entry for Sentencing, App. at 28; Ex. D (Appendix).

## IV.    SUMMARY OF ARGUMENT

Defendants convictions for violations of 40 U.S.C. § 6135 must be dismissed, because as applied to Defendants the statute is neither narrowly tailored to serve a significant government interest nor reasonable, and thus violates the First Amendment. As applied to Defendants, it is clear that the statute is unconstitutionally vague and overbroad and fails to provide reasonable notice of the specific conduct that is prohibited on the Supreme Court Plaza. The statute, as applied, is not viewpoint neutral and thus constitutes an impermissible content-based regulation of speech.

First, Defendants maintain that the Supreme Court Plaza must be deemed a public forum. Notwithstanding the Circuit Court's conclusion in *Hodge*, the fact remains that the Plaza bears the hallmark features of a traditional public forum. Although Congress may enact reasonable restrictions on the time, place, and manner of private speech in a public forum, any restriction based on content are subject to strict scrutiny by the courts. Accordingly, such a restriction must be narrowly tailored to serve a compelling government interest and must not restrict or burden speech any further than that interest requires.

Under this standard, § 6135 fails, and must be found unconstitutional as applied to the case at hand. An absolute ban on expressive conduct, like the one established by § 6135, is always viewed with suspicion, because by its very nature it tends to exceed the bounds of what is absolutely necessary to protect the state's legitimate interest. In this case, § 6135 suffers from

precisely such defect, since protests have regularly occurred at the Plaza throughout history without any material harm to the Court's operations, dignity, or decorum.

Second, even if this Court were to find the Plaza and grounds constitute a non-public forum, § 6135 must still be deemed unconstitutional as applied to Defendants. In a non-public forum, the government may restrict expressive speech, but such restrictions must be reasonable, and must not seek to exclude a speaker based on a viewpoint with which the government disagrees. Here, a blanket restriction on all public speech or assembly in the Plaza is simply unreasonable in light of the manner in which that forum has traditionally been used.

Finally, the government has failed to demonstrate that the expressive conduct at issue here is incompatible with the Plaza. More specifically, it has failed to show that any such conduct would impede the Court's operations, impugn its dignity or decorum, or create any appearance of bias in its decisions. Indeed, the Supreme Court itself has rejected the idea that speech restrictions are necessary to protect the appearance of impartiality or to preserve public confidence in our judiciary. This being the case, the restrictions imposed by § 6135 must be deemed unconstitutional as applied to Defendants.


## V.   STANDARD OF REVIEW

A magistrate judge's acts are subject to the full supervisory authority and control of the district court. *United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011). When a party requests a review of a magistrate's order, "that order 'may be accepted, modified, set aside, or recommitted to the magistrate judge with instructions, after de novo review by the Chief Judge.'" *United States v. Beler*, No. 19-MJ-100 (BAH), 2019 WL 5789747, at *3 (D.D.C. Nov. 6, 2019), citing D.D.C. CRIM. R. 59.3(b); and *United States v. Wheeler*, 746 F. Supp. 2d 159, 161 (D.D.C.

2010). A magistrate's findings are subject to *de novo* review by the district court. *United States v. Wheeler*, 746 F. Supp. 2d 159, 161 (D.D.C. 2010).

## VI.    ARGUMENT

As applied to the specific facts here, § 6135 is unconstitutional. It is unconstitutional as applied whether one applies the "narrowly-tailored" standard applicable to public forums or the "reasonableness" standard applicable to non-public forums. *See United States v. Grace*, 461 U.S. 171, 184 (1983) (Marshall, J., concurring); *Grayned v. City of Rockford*, 408 U.S. 104, 115-16 (1972); *Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015). As shown by the prosecution of Defendants here, § 6135 is overly broad, vague, and is not viewpoint neutral.

### A.    THE GROUNDS OF THE SUPREME COURT ARE A PUBLIC FORUM, THUS THE RESTRICTIONS UNDER SECTION 6135 VIOLATE THE FIRST AMENDMENT.

Section 6135's criminalization of Defendants' non-disruptive, religious expressive conduct on the Supreme Court Plaza on a day when the Court was not in session deprived them of their constitutional rights at the foot of the very institution that is entrusted with protecting those rights. *See United States v. Grace*, 461 U.S. 171, 184 (1983) (Marshall, J., concurring); *Grayned*, 408 U.S. 115-16.

#### 1.    Restriction of Protected Expression on a Public Forum Must be Narrowly Tailored and Viewpoint Neutral.

Generally, "'[p]ublic places' historically associated with the free exercise of expressive activities" warrant treatment as public fora. *Grace*, 461 U.S. at 177 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned*, 408 U.S. at 116. Put another way, "the test is not whether the property

was designed for expressive activity, but whether the objective uses and purposes of the property are compatible with the wide measure of expressive conduct characterizing the public fora." *Warren v. Fairfax County*, 196 F.3d 186, 195 (4th Cir. 1999) (Murnaghan, J., dissenting).

In public fora, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citations omitted); *see also  Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (citing *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009)) ("the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited" and distinguishing between the interior of a polling place and the exterior grounds and finding that the interior was nonpublic); and *Bloch v. District of Columbia*, 863 A.2d 845, 849 (D.C. 2004) (finding that regulations restricting expressive speech must have clear support for their purported justifications). "[T]he government does not have a free hand to regulate private speech on government property." *Summum*, 555 U.S. at 469. The regulation must not burden substantially more speech than is necessary to further the government's legitimate interests. *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1307 (D.C. Cir. 2005).

Moreover, the justification of the restriction must be free from reference to the content of the speech being regulated. *Ward*, 491 U.S. at 791. That is, the restriction must be viewpoint neutral.

2.   **Notwithstanding this Court's Decision in *Hodge*, the Grounds of the Supreme Court are a Public Forum.**

Although the Court of Appeals previously determined that the Plaza was nonpublic, that determination relied on narrow fact patterns and issues, rather than the broader history of the use of the grounds. For example, in *Hodge*, the Court relied upon an overextension of the Supreme Court's narrow holding in *Grace. See Hodge*, 799 F.3d at 1162-63. In *Grace*, the Supreme Court specifically ruled that the sidewalk was a public forum for purposes of § 6135's Display Clause, but did not address the remaining grounds, including the Plaza, or the Assemblages Clause of § 6135. *Grace*, 461 U.S. at 182-83. The decision in *Hodge* was also made without the benefit of the factual development and specific application presented here demonstrating that the Plaza should be treated as a public forum. *Cf. Pearson v. U.S.*, (denying that appellants citation to the demonstration activity of media, attorneys, and litigants, specifically, sufficiently created a public forum for an anti-abortion march); and *Bonowitz v. U.S.*, 741 A.2d 18 (1999) (again denying the *Pearson* argument that the use of the grounds by media and attorneys created a public forum). This Country's deep historical tradition relating to expressive activity on courthouse grounds and the actual use of the Plaza for expressive activity for many reasons compel a finding that it is a public forum

Courthouse grounds have traditionally been places where citizens express their views about societal injustices. *See Grider v. Abramson*, 994 F. Supp. 840, 844 (W.D. Ky. 1998), *aff'd*, 180 F.3d 739 (6th Cir. 1999) (finding "courthouse steps and the park [to be] public forums which have traditionally been used by citizens to exercise their freedom of speech."). A congressional enactment cannot erase that history and tradition. "Congress … may not by its own *ipse dixit* destroy the 'public forum' status" of areas that have historically been public fora. *Grace*, 461 U.S. at 180-81 (internal citations omitted). *See also, Jeannette Rankin Brigade v. Chief of*

7

*Capitol Police*, 342 F. Supp. 575, 583-84 (D.D.C. 1972), *aff'd mem,* 409 U.S. 972 (1972) (declaring the Capitol Grounds statute, § 193g, which § 6135 and its predecessor, § 13k unconstitutional).

In its proscription of "assemblage" and "display," § 6135 specifically refers to "the Supreme Court Building and grounds." Precedent, tradition and function require that a distinction be made in determining whether a particular area should be treated as a public forum. In *Grace*, the Supreme Court held that the sidewalks comprising the grounds of the Supreme Court constituted a public forum. Similarly, in *Cohen v. California*, 403 U.S. 15, 21-22 (1971) the Court held that the corridor inside a courthouse was a public forum. Other courts have held that individual courtrooms are not public forums. *See*, *Huminski v. Corsones*, 396 F.3d 53, 90-91 (2d Cir. 2005) (treating actual courtrooms in courthouses as nonpublic) and *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) (holding courtrooms are non-public fora). The decision in *Hodge* notwithstanding, this Court should consider whether or not based on the facts here, the Plaza functions more like a sidewalk or corridor than a courtroom.

It is undisputed that a variety of expressive activity has been permitted to occur on the Supreme Court Plaza. Citizens exercising their First Amendment rights have routinely used the Plaza to engage in activities that, would otherwise, appear to violate § 6135 as it is written.

For example, the Religious Freedom Coalition, which lobbies the government against regulation of religion, prays annually on the Supreme Court grounds to commemorate the National Day of Prayer. *See* Ex. E.

Similarly, following the Court's ruling on the Defense of Marriage Act, in June 2013, litigants, their attorneys, and supporters on both sides assembled in front of the Court, including on the Plaza, carrying sign, cameras and chanting. *See* Exs. F and G.

8

In December 2015, demonstrators held a sign aloft and many individuals milled about the steps and Plaza holding signs as the affirmative action in university admissions case was being heard at the Supreme Court. *See* Ex. H.

Most recently, in January 2019, five human rights activists, including Manijeh Saba ("Saba"), displayed a banner on the Supreme Court steps in protest of all forms of torture. Their banner stated: "We Target. We Torture. We Terrify. Who Are We?" *See* Ex. I.

These uses of the grounds have historical precedent. On August 22, 1958, Thurgood Marshall—then a litigator and key member of the legal team that challenged the government of the state of Arkansas —congregated on the steps of the Supreme Court with civil rights activists and members of the "Little Rock Nine." This congregation took place years after the Court's decision in *Brown v. Board Education* and served no purpose other than to make a statement on the state of racial discrimination in the United States. *See* Ex. J.

The Supreme Court Plaza and grounds have long been considered and used as a public forum, the Court should find them so here.

> **3.    Section 6135 Is Neither Narrowly Tailored to Serve a Significant Governmental Interest Nor Viewpoint Neutral.**

Because the Supreme Court Plaza should be considered a public forum, any restriction of expressive conduct in the Plaza must be narrowly tailored to serve a compelling interest. It does not. Under the strict scrutiny standard, by which § 6135 must be reviewed, it fails as applied to Defendants' conduct as the statute is neither sufficiently narrowly tailored to the government's interests nor content neutral. The statute, therefore, is unconstitutional.

First, the statute is not sufficiently narrowly tailored to the government's interest. Section 6135's stated purpose is to promote facilitating ingress and egress of employees and visitors to the Court while "maintaining order and decorum at the Supreme Court and in avoiding the impression that popular opinion and public pressure affect the Court's deliberations." *Hodge*, 799 F.3d at 1165. However, § 6135's proscription goes far beyond this and essentially prohibits all expressive conduct on the Plaza. In addition to being broad, § 6135's prohibition on displays "designed… to bring into public notice a party, organization, or movement" is vague in light of its failure to further define those terms. Without clarification as to the scope of its application, § 6135 as applied here is unconstitutionally vague and overly broad.

Defendants' conduct, prayer for the plight of the poor in the United States, is the essence of First Amendment expression. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). As declared by President Trump on May 3, 2018, the National Day of Prayer: "Prayer has been a source of guidance, strength, and wisdom since the founding of our Republic." May 3, 2018 Presidential Proclamation, available at https://www.whitehouse.gov/presidential-actions/president-donald-j-trump-proclaims-may-3-national-day-prayer/. On June 11, 2018, Defendants bowed their heads to pray to mark the fiftieth anniversary of Reverend Martin Luther King's Poor People's Campaign, and specifically to end voter suppression, systematic inequality, and poverty in the United States.

Defendants' conduct is not inconsistent with other kinds of activities for which the Plaza is regularly used—in particular, as a platform for the expression of ideas and opinions pertaining to matters of public importance—precisely the types of matters that routinely come before the Court. Defendants' conduct was consistent with the "order" and "decorum" that the statute is designed to maintain. Nor could the prayers offered up by Defendants reasonably give the

impression of influencing the Court, which was not in session on June 11, 2018,

The lack of proper notice and the historically inconsistent prosecution of alleged violators of § 6135, leave even a well-informed citizen without the necessary guidance to determine what conduct is or is not allowed and where.[2] Unlike Hodge, who was prosecuted and found guilty, Defendants did not "picket" or "hand out leaflets." While they did wear t-shirts simply stating "Poor People's Campaign," they did not display any signs or banners, unlike Saba, who stood on the steps and held up a sign saying "We Target, We Torture, We Terrify: Who Are We?" and was acquitted.[3] The diametrically opposed outcomes of these two cases lays bare the inherent and unconstitutional vagueness of § 6135 as applied to expressive conduct. It is clear that the statute's vagueness extinguishes a citizen's notice of what they may or may not do under the statute.

Concerningly, potential infringers are not alone in failing to grasp a clear meaning of the statute. While clearly finding that Defendants' actions violated § 6135, the Court's October 24, 2019 Memorandum Opinion and Order (the "Opinion") viewed the protesters of Justice Brett Kavanaugh's appointment as only "hypothetically" violating the statute in certain circumstances.

---

[2] Despite the different physicality and construction materials used in the Plaza as compared to the other grounds, there is no evidence that individuals were put on actual notice that they would face more onerous restrictions of expressive conduct on the Plaza or other grounds of the Supreme Court. See *U.S. v. Marcavage*, 609 F.3d 264, 276 (3d Cir. 2010) (focusing its analysis on whether an individual was put on notice that "he [or she] was on the sort of property "where expressive activity was disallowed; "we are aware of no authority suggesting that a unique construction material underfoot, without more, would necessarily put an individual on notice that he was suddenly treading on a different sort of government property where expressive activity was disallowed").

[3] Without issuing a formal opinion, the District Court for the District of Columbia, Magistrate Judge Deborah Robinson, acquitted Saba. *See* Ex. K (Docket for Case 1:19-mj-00007-DAR-2, *USA v. Lingle*). It was reported that the judge found that the government failed to meet its burden to offer evidence that Saba's purpose was to "bring into public notice" a movement. *See* Ex. L ("Manijeh Saba Acquitted in Jan. 9, 2019 Supreme Court Protest," Witness Against Torture, Mar. 29, 2019).

ECF No. 164 at 13. There is nothing hypothetical about the Kavanaugh protesters' violation of the plan language of § 6135. They stormed the steps of the Supreme Court and banged on the doors. *See* Ex. M. Yet, there is no available evidence that the government pursued indictments of any those persons.[4] Defendants, on the other hand, never moved beyond the Plaza, which is located a full two levels below where the Kavanaugh protesters made their grand stand. The Court's inability to clearly identify that the Kavanaugh protesters violated the statute belies the statute's lack clarity. The selective prosecution of potential violators confirms its lack of neutrality.

The statute as applied to Defendants' conduct is unconstitutional because it not viewpoint neutral. The conduct that the Opinion criminalized here, is on par with, if not more benign than, other expressive conduct that has gone unpunished, indicating that content, and not conduct, is the driving force behind the statute's application.

"A law must not be so broad as to "effectively grant[ ] police the discretion to make arrests selectively on the basis of the content of the speech." *Houston v. Hill*, 482 U.S. 451, 465 & n.15 (1987) (citing *United States v. Reese*, 92 U.S. (2 Otto) 214, 221 (1875) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.")). This is because, under the First Amendment, the government cannot regulate speech based on its content. See *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95–96 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content.").

---

[4] The government has not disputed this fact. In response to the defendants' arguments on this topic in the April 5, 2019 Joint Motion to Dismiss, the government offered one tributary line: "several arrests were made in relation to protests of Justice Kavanaugh's appointment by the Supreme Court Police Department." ECF No. 121 at 6.

Additionally, § 6135 only selectively criminalizes speech that is "designed… to bring into public notice a party, organization, or movement."  The statute does not criminalize all speech aiming to draw attention to its speaker. It specifically targets speech based on content that brings into notice a party, organization or movement, and therefore is not viewpoint neutral.

As demonstrated in its application to Defendants, § 6135 is an open door for inconsistency and content-based restriction. Prayer on the Supreme Court Plaza is explicitly condoned in at least one other context:  the Religious Freedom Coalition prays annually on the Court's steps on the National Day of Prayer. More importantly, it does so without fear of prosecution. Thus, because § 6135 allows for the criminalization of Defendants' prayer while simultaneously allowing the Religious Freedom Coalition prayer, it is an unconstitutional content-based regulation on speech.

Once, as here, the issue has been properly raised, "the burden is upon the government to establish the constitutional validity of the restriction." *Bloch*, 863 A.2d at 850. The government has not met its burden. In addition to the justified purposes of "maintaining order and decorum," the government proffers the justification that the restriction is necessary to shield the Supreme Court from the appearance (and actuality) of influence. This justification has been previously rejected by the Supreme Court itself. *See also Minnesota Voters Alliance*, 138 S. Ct. at 1885 (finding "little more than assertion and conjecture to support [the State]'s claim.").

Simply, the government's justifications of "order," "decorum," and "impartiality" ring hollow. Section 6135, therefore, is not sufficiently narrowly tailored, fails to meet the strict scrutiny test, and is thus unconstitutional.

**B.**     **EVEN IF THIS COURT DISAGREES THAT THE GROUNDS OF THE SUPREME COURT ARE A PUBLIC FORUM, THE RESTRICTIONS UNDER SECTION 6135 ARE NOT REASONABLE AND VIOLATE THE FIRST AMENDMENT.**

**1.**     **The Government May Only Restrict Protected Expression in a Non-Public Forum if the Restriction is Reasonable.**

Assuming, *arguendo*, that the Supreme Court Plaza is a nonpublic forum, a restriction on the First Amendment right to free speech and expression is only constitutionally valid and enforceable if it is not intended to prevent speech with which the government disagrees, and if it is reasonable. *See Hodge*, 799 F.3d 1162. It must be "reasonable" so as "not an effort to suppress the speaker's activity due to disagreement with the speaker's view." 799 F.3d at 1162 (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992)). See also *Pearson v. United States*, 581 A.2d 347, 353 (D.C. 1990) (restriction must be "reasonable and viewpoint neutral"). Such a restriction is reasonable only if the burden imposed upon a constitutionally protected right is outweighed by the precise interests proffered by the government to justify the imposition and, even then, only to the extent that these interests make it necessary to burden those constitutional rights. Courts possess an independent constitutional duty to review the interests asserted by the government where constitutional rights are at stake, and the need for the imposition on such rights must be supported by substantial evidence showing that the imposition will alleviate a real harm to a material degree.

Although the government enjoys broader latitude to enact restrictions on constitutionally protected conduct in a non-public forum, such restrictions must still be reasonable in light of the traditional purpose of the forum in which the restriction applies. *Grace*, 461 U.S. at 178. The restriction must also not seek to exclude a speaker from the forum on the basis of the government's disagreement with her viewpoint. *Grace*, 461 U.S. at 178; *U.S. v. Wall*, 521 A.2d

14

1140, 1143 (D.C. 1987). Should the restriction fail to satisfy either one of these requirements, as it has done so here, it must be deemed unconstitutional and invalid.

>    **2.    Section 6135 Unreasonably Restricts Constitutionally Protected Expression and Thus Violates the First Amendment.**

Under this rubric, § 6135 fails to withstand constitutional muster. The outright ban on expressive speech on the Plaza far exceeds the bounds of what is necessary to protect the government's proffered interest, decorum and dignity of the court, and is therefore unreasonable. Moreover, the government has failed to offer any evidence, that the harms which § 6135 seeks to avoid are real or that the statute's restrictions on constitutionally protected conduct will alleviate those concerns and promote the government's purpose. These deficiencies are fatal, ultimately rendering the statute unconstitutional. Since an unconstitutional statute cannot provide the basis for a criminal prosecution or conviction, the court must set aside the Defendants' conviction and sentence.

The government asserts that the restrictions set forth in § 6135 are reasonable in light of the traditional functions of the Court, the need to preserve the Court's dignity and decorum, as well as the appearance of impartiality in rendering decisions. However, the Supreme Court has already rejected precisely such an argument when if found such interests to be insufficiently compelling to justify an absolute ban on constitutionally protected forms of speech. In *Republican Party of Minnesota v. White*, 536 U.S. 765, 766 (2002), the Supreme Court was tasked with reviewing a provision of the Minnesota Code of Justice which prohibited all candidates for judicial office from speaking publicly about their positions and opinions on legal or political issues.

In that case, a candidate for Associate Justice of the Minnesota Supreme Court sued to

have the statute declared unconstitutional because it prohibited him from responding to voters' questions regarding his views on disputed legal issues during the course of his campaign. *Id.* Minnesota argued that the restriction on speech was reasonable, that it was necessary to protect the state's interest in preserving both the actual and apparent impartiality of the judiciary, and that it was therefore constitutional. *Id.*, at 770. It further noted that the statute only restricted speech on issues that were likely to come before the candidates if they were elected to judicial office. *Id.* at 771.

Although the District Court and the Eighth Circuit both agreed with Minnesota's position, the Supreme Court disagreed and issued an opinion in which it reversed both lower courts and forcefully rejected the State's arguments in their entirety. In its opinion, the Supreme Court observed that "there is almost no legal or political issue that is unlikely to come before a judge of an American court, state or federal, of general jurisdiction. *Id.*, at 772, quoting *Buckley v. Illinois Judicial Inquiry Bd.*, 997 F.2d 224, 229 (7th Cir. 1993). Pretending that judicial officers, whether appointed or elected to the bench, would not be influenced in their work by their own knowledge or experience with respect to such issues "neither possible nor desirable," and "can hardly be a compelling state interest[.]" *Id.*, at 778. The Court further concluded that Minnesota had failed to sufficiently establish its underlying proposition that such considerations might improperly influence judges at all in the performance of their judicial functions. *Id.*, at 781, citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 814 (1978) (rejecting a similar restriction based on "little more than assertion and conjecture" offered by the State).

The same rationale which prompted the Supreme Court to invalidate the Minnesota statute applies to the matter now under consideration. The government has failed to establish a legitimate basis for the restrictions on protected speech set forth in § 6135. Confronted with a

similar issue nearly 60 years earlier, in *Bridges v. State of Cal.*, 314 U.S. 252, 270-71 (1941), which involved a restriction on speech that was asserted to be necessary in order to preserve respect for the judiciary and prevent disorderly and unfair administration of justice, the Supreme Court again concluded that restrictions on speech are unnecessary to preserve judicial integrity, finding that the "very word 'trial' connotes decisions on the evidence and arguments properly advanced in open court." *Id.* at 271. Accordingly, the restriction here is unreasonable with respect to the traditional function of the Supreme Court and is therefore an unconstitutional restriction on constitutionally protected conduct.

## VII.   CONCLUSION

For the foregoing reasons, § 6135 is unconstitutional as over-broad, vague, and as-applied to Defendants' conduct on June 11, 2018, a content-based restriction. Defendants respectfully submit that the Court should overturn the Opinion and dismiss their convictions and sentences.

Dated: January 31, 2020

_____ /s/ _____

Jeffrey D. Robinson
(D.C. Bar #376037)
LEWIS      BAACH      KAUFMANN
MIDDLEMISS PLLC
1101 New York Ave., NW, STE 1000
Washington, D.C. 20005
(202) 833-8900 (voice)
(202) 466-5738 (facsimile)
jeffrey.robinson@lbkmlaw.com

*Counsel   for   Defendants   Rosalyn*
*Woodward Pelles and Shailly Barnes*

_____ /s/ _____

Ronald S. Sullivan Jr.
D.C. Bar #451518

17

6 Everett Street, Suite 5116
Cambridge, MA 02138
(617) 496-4777 (p)
(617) 496-2277 (f)
prof.ron.sullivan@gmail.com

*Counsel    for    Defendant    Elizabeth
Theoharis*